## AFFIDAVIT OF SPECIAL AGENT CHRISTIAN VAN KLEEFF

I, Special Agent Christian Van Kleeff, depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been an ATF Special Agent since December 2023, and during that time I have been involved in investigations of violations of federal firearm and controlled substance laws. Currently, I am assigned to a group in the Boston Field Division of the ATF that, in part, works with other federal, state, and local police departments to investigate and prosecute violations of the federal firearms and controlled substance laws.

2. Based on my training and experience as an ATF Special Agent, I am familiar with federal firearms and narcotics laws. In this regard, I know that it is a violation of 18 U.S.C. § 922(g)(1) for a person previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition that has crossed state or national boundaries, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. On the same basis, I know that the possession element of a felon-in-possession charge can be satisfied by showing either actual or constructive possession, and by showing either sole or joint possession. As set forth below, there is probable cause to believe that Sean BROWN ("BROWN") violated 18 U.S.C. § 922(g)(1) on or about February 12, 2025 by illegally possessing a firearm. The information contained in this affidavit is based on my own investigation and written reports by other law enforcement officers and database checks. The dates and times in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of supporting issuance of a federal complaint and arrest warrant for BROWN, I have not presented every fact learned during the investigation, but only that information

1

necessary to fully support probable cause for the issuance of the complaint and arrest warrant for BROWN.

3. I am aware that BROWN was convicted in this District on or about January 22, 2021, of Conspiracy to Possess with Intent to Distribute Narcotics in violation of 21 U.S.C. § 846. On or about June 21, 2021, BROWN was sentenced to 60 months' (5 years') incarceration and 48 months of supervised release. BROWN is still on federal supervised release in this District. BROWN's above federal arrest and conviction arose from an investigation of the NOB street gang, a violent, Boston-based criminal organization with a history of firearms-related crimes.

4. On or about February 12, 2025, at approximately 8:40 a.m., two Boston Police Department ("BPD") officers attempted to serve an arrest warrant for an individual at 880 Cummins Highway, Apartment #1, in the Mattapan area of Boston. The arrest warrant had been issued on February 11, 2025, from the Suffolk County Superior Court. The two officers, who were in uniform, knocked on the door of Apartment #1 and announced their presence. Over a period of a few minutes, officers were unable to make contact with anyone in the apartment. The officers were able to hear some form of movement in the apartment consistent with someone being in the apartment. The officers continued to knock. An unknown male (later identified as BROWN) stated: "Who is it?" The officers identified themselves as the police. At that point, officers heard footsteps leaving the area near the door and the door lock being manipulated. Officers continued to knock and identify themselves as police officers.

5. A female (who was subsequently identified) opened the door. The officers remained outside the apartment. The officers spoke to the woman about the individual for whom

they had an outstanding arrest warrant. During their communications, the woman stated that "Ricky" had been arrested and was in jail. After a few moments, officers observed BROWN appear from the area where the kitchen is located in the apartment. Officers thereafter spoke to both BROWN and the woman about the individual for whom they had the arrest warrant. Both BROWN and the woman stated that they did not live at the apartment and that the apartment belonged to the individual for whom the police were looking. During their engagement with BROWN and the woman, the officers observed suspicious behavior, especially from BROWN. The officers became concerned that evasive actions were taking place to prevent the apprehension of the individual with the pending arrest warrant. Officers requested to enter the apartment to do a search for the individual. BROWN replied: "Go ahead."

6. As one of the officers was conducting a sweep of a bedroom, he looked under the bed (a common place for people to hide) and observed an AR-15 style rifle in plain view. Given the discovery of the rifle, the officers on scene alerted other BPD personnel for assistance. The officers also asked whether BROWN or the woman had a license to carry a firearm in Massachusetts. Neither had such a license.

7. A BPD Sgt. Detective responded to the scene and began a survey of the location prior to securing the apartment pending the issuance of a search warrant. The Sgt. Detective opened the rear door to the apartment which led into a common area for the building. The Sgt. Detective observed a handgun in a metal bucket in the common hallway just outside the rear door to the apartment. BROWN was placed in handcuffs by the BPD. The Sgt. Detective ultimately obtained video footage from a building security camera which showed BROWN placing a handgun in the bowl just outside of Apartment #1. BROWN was provided with *Miranda* warnings.

BROWN initially denied knowledge of the handgun. BROWN was informed that there was a security camera at the rear exit door and that officers would be able to observe who placed the handgun in the back hallway. While retrieving his personal belongings in anticipation of being transported to a BPD station, BROWN stated to the Sgt. Detective that a firearm had been on a table and that BROWN moved the firearm to the rear common hallway when he heard the police initially knocking on the apartment's front door.

8. The firearm was a Glock 37, .45 caliber semi-automatic pistol, bearing serial number FNX467, and was loaded with seven rounds of ammunition in the magazine and one round in the chamber. Based upon a review of the firearm information by an ATF Interstate Nexus expert, it was opined that the firearm was not manufactured in the Commonwealth of Massachusetts and, therefore, the firearm traveled in interstate or foreign commerce prior to February 12, 2025.

9. A state search warrant was issued for the apartment. Pursuant to the search warrant, officers recovered several other items, including, but not limited to: (1) two loaded rifles; (2) a Glock 19, 9mm semi-automatic pistol with an extended magazine; (3) three large plastic bags containing a white powder believed to be cocaine (approximately 449 grams); (4) one large plastic bag containing a brown powdery substance believed to be fentanyl (approximately 61 grams); (5) one large plastic bag containing an off-white rock-like substance believed to be crack cocaine (approximately 134 grams); and (6) a laser firearm attachment.

4

10. Based on the above, I believe probable cause exists that on or about February 12, 2025, within the District of Massachusetts, Sean BROWN violated 18 U.S.C. § 922(g)(1) as set forth above.

_____
Christian Van Kleeff
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Signed electronically and sworn to telephonically in accordance with Federal Rule of Criminal Procedure 4.1 on 3:42 PM, Mar 17, 2025

_____
HON. JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE